## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| ALASKA FRESH FISH & CHICKEN, LLC | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No._____ |
| UNITED STATES OF AMERICA | ) ) ) |
| Defendant. | ) ) ) |

## COMPLAINT FOR JUDICIAL REVIEW OF FINAL AGENCY DECISION

Plaintiff Alaska Fresh Fish & Chicken, LLC ("Alaska Fresh Fish & Chicken" or "Store"), by and through undersigned counsel, pursuant to 7 U.S.C. § 2023 and 7 C.F.R. § 279.7, hereby files this Complaint against Defendant United States and alleges:

1.     This action seeks judicial review of the Final Agency Decision ("FAD"), dated February 7, 2025, issued by USDA's Food and Nutrition Service ("FNS"), which imposed a six-month term disqualification on Alaska Fresh Fish & Chicken's retail food store precluding its participation as an authorized retailer in the Supplemental Nutrition Assistance Program ("SNAP").

## PARTIES

2.      Plaintiff Alaska Fresh Fish & Chicken is a Michigan limited liability company with its principal place of business in this judicial district.

3.      Plaintiff Alaska Fresh Fish & Chicken does business as Alaska Fresh Fish & Chicken, a retail food store that predominantly sells chicken, fish, and other seafood products at its location in a deeply impoverished neighborhood in Oak Park, Michigan.

4.      The Store is a "Retail Food Store" as such term is defined in 7 C.F.R. §271.2.

5.      Defendant United States of America is the federal government.

6.      United States Department of Agriculture ("USDA") is an executive branch department of the federal government.

7.      FNS is an agency of the USDA.

8.      FNS administers and has promulgated regulations governing SNAP pursuant to powers delegated by Congress in Section 4 of the Food and Nutrition Act of 2008.  7 U.S.C. §2013.

## JURISDICTION AND VENUE

9.       This Court has subject matter jurisdiction over this *de novo* judicial review action of FNS's FAD pursuant to 7 U.S.C. § 2023, 7 C.F.R. § 279.7, and 28 U.S.C. §§ 1331, 1346.

10.     This Court has personal jurisdiction over the parties pursuant to 7 U.S.C. § 2023.

11.     This Court has jurisdiction to grant declaratory and further necessary and proper relief pursuant to Federal Rules of Civil Procedure 57 and 65.

12.     Venue in this district is proper under 7 U.S.C. § 2023 and 28 U.S.C. §§ 1391(b) and (e) because Alaska Fresh Fish & Chicken is located in Michigan within this judicial district.  Venue is also proper because the United States of America is deemed a resident of this judicial district and has consented to suit in this judicial district in SNAP judicial review proceedings.  7 U.S.C. § 2023(a)(13).

13.     Alaska Fresh Fish & Chicken has exhausted any and all administrative remedies required prior to the institution of this action.


## SNAP

14.     Formerly known as the food stamp program, SNAP provides supplemental nutrition benefits to more than 40 million Americans and more than 1.4 million Michigan residents.

15.     SNAP's fundamental purpose is to provide eligible low-income households with increased food purchasing power. 7 U.S.C. § 2011.

16.     Pursuant to SNAP regulations set forth in Part 278 of Title 7 of the Code of Federal Regulations, FNS has authority to authorize and disqualify retail food stores from participation in SNAP.

## FACTUAL ALLEGATIONS

17.     Alaska Fresh Fish & Chicken is a retail food store that specializes in raw chicken, fish, and seafood items.

18.     Alaska Fresh Fish & Chicken opened for business in approximately April 2012 and received its SNAP (formerly the food stamp program) authorization on February 22. 2013.

19.     At all times relevant hereto, Alaska Fresh Fish & Chicken is and has been authorized by FNS to participate in SNAP as an authorized retailer.

20.     At all times relevant hereto, Alaska Fresh Fish & Chicken has trained its employees regarding SNAP in accordance with FNS requirements.

21.     At all times relevant hereto, Alaska Fresh Fish & Chicken has properly supervised its employees, including regarding SNAP transactions and program requirements.

22.     The overwhelming majority of gross receipts at Alaska Fresh Fish & Chicken are from the sale of SNAP-eligible staple food items.

23.     On or about November 18, 2022, Alaska Fresh Fish & Chicken submitted its application for SNAP reauthorization in response to a request to do so from FNS.

24.     Via letter, dated February 10, 2023, FNS requested information related to the Store's sales, including a sales spreadsheet in six categories and end of day sales summaries (Z-tapes) for the week between November 6 through 12, 2025, and

25.     On February 13, 2023, Alaska Fresh Fish & Chicken fully responded to the Request for Records and submitted the documentation requested by FNS.

26.     On March 16, 2023, FNS withdrew Alaska Fresh Fish & Chicken's SNAP authorization ("Withdrawal Letter").

27.     The stated reason for FNS's withdrawal of the store's SNAP authorization was that FNS "has determined that your firm does not meet the definition and requirements of a retail food store . . . and therefore is ineligible to participate in SNAP as an authorized vendor." *Id.*

28.     On March 24, 2023, Alaska Fresh Fish & Chicken timely requested administrative review of the withdrawal determination to FNS's Administrative and Judicial Review Branch.

29.     On April 18, 2023, Alaska Fresh Fish & Chicken provided additional documentation in support of the request for administrative review.

30.     Alaska Fresh Fish & Chicken's responses provided daily listings of gross sales for a two-week period in late January and early February 2023 in five of the six requested categories: hot foods, cold foods prepared on-site, non-foods, accessory foods, and staple foods.  The Store does not charge customers to cook or heat food bought cold or raw.

31.     The week-long period requested by FNS did not reflect typical sales for Alaska Fresh Fish & Chicken.

32.     The two week-long period reflected on the spreadsheet submitted by Alaska Fresh Fish & Chicken did not reflect typical sales for the Store.

33.     More than 50% of the gross receipts at Alaska Fresh Fish & Chicken during the three-month period set forth in the Request for Records were neither cooked nor heated onsite (pre-sale or post-sale) nor were cold foods prepared on-site.

34.     FNS does not require SNAP retailers to use sophisticated point-of-sale equipment that provide a high level of detail on each register receipt.

35.     FNS improperly shifts the burden of proof onto retailers to show that they were not a "restaurant," and that any agency decision that imposes a *de facto* requirement of providing detailed register receipts as a condition of authorization without going through the notice and comment rulemaking process is not consistent with and violates the Administrative Procedure Act.

36.     On February 7, 2025, FNS Administrative Review Officer Elizabeth Allen issued a Final Agency Decision ("FAD") affirming the withdrawal of Alaska Fresh Fish & Chicken's SNAP authorization. A copy of the FAD is attached hereto as Exhibit A.

37.     In its FAD, FNS affirmed the withdrawal of Alaska Fresh Fish & Chicken's SNAP authorization based solely on the limited and incomplete spreadsheet and Z tapes the Store provided.

38.     The FAD concluded that "since the firm's total gross retail sales for that week showed that more than 50 percent of total gross retail sales were from the sale of hot and/or cold prepared foods, under SNAP regulations, it is classified as a restaurant and therefore ineligible for SNAP retailer authorization." FAD, at 4.

39.     The FAD noted that the "purpose of this review is to either validate or invalidate the withdrawal of a firm's SNAP authorization." *Id.* They also stated that "[t]his review is limited to consideration of the relevant facts as they existed at the time the Retailer Operations Division rendered its decision." *Id.*

40.     The FAD relied heavily upon a short contractor's visit to the Store, which took place on August 29, 2022, long before the time period for which FNS requested sales documentation. *Id.* at 2.

41.     The FAD was also based on FNS's were also premised heavily upon on its 2017 regulation entitled, "Enhancing Retailer Standards in the Supplemental Nutrition Assistance Program (SNAP)," at 81 Federal Register 90675.

42.     FNS's 2017 regulation provides, in pertinent part, that "if more than 50 percent of a firm's sales come from the sale of heated or prepared foods, the firm is considered a restaurant under SNAP regulations and therefore is ineligible for authorization. The final rule clarified that any foods cooked or heated on-site by the retailer before or after purchase, and any hot or cold prepared food not intended for home preparation or consumption, including foods consumed on the premises or sold for carryout, count toward the 50 percent threshold. This portion of the rule was implemented by FNS on October 16, 2017." *Id.* at 4.

### COUNT I - JUDICIAL REVIEW OF FINAL AGENCY ACTION PURSUANT TO 7 U.S.C. § 2023 AND 7 C.F.R. § 279

43.     Plaintiff Alaska Fresh Fish & Chicken repeats and re-alleges paragraphs 1 through 42 as if fully set forth herein.

44.     At all times relevant hereto, a majority of Alaska Fresh Fish & Chicken's gross receipts were of staple food items, accessory food items, or non-food items that were neither cooked nor heated on-site (pre-sale or post-sale).

45.     At no time has FNS promulgated a regulation that requires SNAP-authorized retailers to keep register receipts from SNAP transactions.

46.     At no time has FNS promulgated a regulation that requires SNAP-authorized retailers to keep register receipts from non-SNAP transactions.

47.     At no time has FNS promulgated a formal policy memorandum that requires SNAP-authorized retailers to keep register receipts from SNAP transactions.

48.     At no time has FNS promulgated a formal policy memorandum that requires SNAP-authorized retailers to keep register receipts from non-SNAP transactions.

49.     No federal or state law or regulation required SNAP retailers to maintain register receipts during the three-month period preceding the Request for Records.

50.     No regulation promulgated by FNS required SNAP retailers to maintain register receipts during the three-month period preceding the Request for Records.

51.     FNS's SNAP Retailer Training Guide is not a regulation promulgated under the Administrative Procedure Act following public notice and an opportunity to comment.

52.    FNS's SNAP policy memoranda, including Policy Memorandum 2017-01, is not a regulation promulgated under the Administrative Procedure Act following public notice and an opportunity to comment.

53.    FNS's SNAP policy memoranda, including Policy Memorandum 2017-01, Rev. 1, are not regulations promulgated under the Administrative Procedure Act following public notice and an opportunity to comment.

54.    At no time did FNS provide SNAP retailers with notice via e-mail or other direct communication that it amended its SNAP Retailer Training Guide during January 2018.

55.    At no time did FNS notify Alaska Fresh Fish & Chicken that it amended its SNAP Retailer Training Guide during January 2018.

56.    At no time has FNS notified SNAP retailers with notice via e-mail or other direct communication that it issued Policy Memorandum 2017-01.

57.    At no time has FNS notified Alaska Fresh Fish & Chicken that it had issued Policy Memorandum 2017-01.

58.    At no time has FNS notified SNAP retailers with notice via e-mail or other direct communication that it issued Policy Memorandum 2017-01, Rev. 1.

59.    At no time has FNS notified Alaska Fresh Fish & Chicken that it had issued Policy Memorandum 2017-01, Rev. 1.

60.     FNS's SNAP Retailer Training Guide does not provide any specificity regarding the type of point-of-sale system that SNAP retailers should utilize.

61.     FNS's SNAP Retailer Training Guide does not provide any specificity regarding the type of register receipts that SNAP retailers should utilize.

62.     FNS's SNAP Retailer Training Guide does not provide any specificity regarding the information that should be provided on register receipts given to customers.

63.     FNS's SNAP Retailer Training Guide does not provide any specificity regarding the information that should be provided on register receipts that SNAP retailers should maintain.

64.     At no time has FNS published a notice or other alert on its website advising SNAP retailers that it amended its SNAP Retailer Training Guide during January 2018.

65.     At no time has FNS promulgated a regulation that requires SNAP-authorized retailers to keep register receipts that provide details regarding foods cooked or heated on-site.

66.     At no time has FNS promulgated a regulation that requires SNAP-authorized retailers to keep register receipts that provide details regarding foods cooked or heated on-site, pre-sale.

67.    At no time has FNS promulgated a regulation that requires SNAP-authorized retailers to keep register receipts that provide details regarding foods cooked or heated on-site, post-sale.

68.    At no time has FNS promulgated a regulation that requires SNAP-authorized retailers to install a point-of-sale system to process SNAP transactions.

69.    At no time has FNS promulgated a regulation that advises SNAP-authorized retailers that their failure to install a sophisticated point-of-sale system to process SNAP transactions could result in the withdrawal of their SNAP authorization.

70.    At no time has FNS promulgated a regulation that advises SNAP-authorized retailers that their failure to keep register receipts could result in the withdrawal of their SNAP authorization.

71.    At no time has FNS promulgated a regulation published or issued a notice on its website or elsewhere that advises SNAP-authorized retailers that their failure to install a sophisticated point-of-sale system to process SNAP transactions could result in the withdrawal of their SNAP authorization.

72.    At no time has FNS promulgated a regulation that requires SNAP-authorized retailers to install a sophisticated point-of-sale system similar to those used by many large retailers, including most SNAP-authorized superstores.

73.     No point-of-sale system in use by SNAP retailers differentiates between foods cooked or heated on-site and off-site.

74.      Neither FNS nor Plaintiff is aware of a point-of-sale system in use by SNAP retailers that differentiates between foods cooked or heated pre-sale and post-sale.

75.     FNS did not have a proper basis for withdrawing Alaska Fresh Fish & Chicken's SNAP authorization.

76.     A preponderance of the evidence that FNS considered in issuing the FAD did not support its decision to withdraw Alaska Fresh Fish & Chicken's SNAP authorization.

77.     A preponderance of the evidence relating to the Store's sales during the three-month period requests in FNS's correspondence does not support its decision to withdraw Alaska Fresh Fish & Chicken's SNAP authorization.

78.     FNS withdrew Alaska Fresh Fish & Chicken's SNAP authorization because it failed to provide records it was not required by FNS to keep pursuant to a validly promulgated regulation.

79.     FNS withdrew Alaska Fresh Fish & Chicken's SNAP authorization because it failed to provide records it was not required by FNS to keep pursuant to a publicly issued policy memorandum.

80.     FNS withdrew Alaska Fresh Fish & Chicken's SNAP authorization because it failed to provide all requested records without sending follow-up correspondence requesting missing or additional records.

81.     FNS's Policy Memorandum 2017-01 does not require SNAP retailers to keep register receipts.

82.     FNS's Policy Memorandum 2017-01, Rev. 1 does not require SNAP retailers to keep register receipts.

83.     FNS improperly shifted the burden of proof to Alaska Fresh Fish & Chicken to disprove that it is a restaurant in violation of the Food and Nutrition Act and FNS's SNAP regulations.

84.     FNS improperly shifted the burden of proof to Alaska Fresh Fish & Chicken to disprove that it is a restaurant in violation of the Administrative Procedure Act.

85.     FNS's decision to withdraw Alaska Fresh Fish & Chicken's SNAP authorization was invalid, unreasonable, and arbitrary and capricious.

86.     FNS's decision to withdraw Alaska Fresh Fish & Chicken's SNAP authorization was *ultra vires* and exceeds the authority delegated to USDA in the Food & Nutrition Act of 2008.

87.     FNS's decision to withdraw Alaska Fresh Fish & Chicken's SNAP authorization should be reversed because FNS required the store to submit compelling evidence that it was not a restaurant.

88.     FNS's decision to withdraw Alaska Fresh Fish & Chicken's SNAP authorization should be reversed because FNS failed to consider all evidence related to the Store.

89.     FNS's withdrawal of Alaska Fresh Fish & Chicken's SNAP authorization was not rationally related to any legitimate governmental interest.

90.     FNS's withdrawal of Alaska Fresh Fish & Chicken's SNAP authorization is inconsistent with Congressional intent in enacting the Food and Nutrition Act of 2008.

91.     FNS's withdrawal of Alaska Fresh Fish & Chicken's SNAP authorization represents agency action beyond the scope of authority granted by Congress to USDA when it delegated power to promulgate and enforce reasonable regulations in the Food and Nutrition Act of 2008.

92.     FNS's withdrawal of Alaska Fresh Fish & Chicken's SNAP authorization represents agency action beyond the scope of authority delegated by the USDA Secretary to FNS.

93.     FNS, in issuing the FAD, relied upon records and other information in FNS's possession which were never provided to Alaska Fresh Fish & Chicken.

94.    The FAD was not based upon any declarations or affidavits from a USDA or FNS official, employee, or contractor whose identity was disclosed to Alaska Fresh Fish & Chicken.

95.    The FAD is FNS's final administrative determination related to the withdrawal of Alaska Fresh Fish & Chicken's SNAP authorization.

96.    The FAD is subject to judicial review and a trial *de novo* pursuant to 7 U.S.C. §§ 2023(a)(13), (15).

97.    Judicial reviews pursuant to 7 U.S.C. §§ 2023(a) are not governed by the Administrative Procedure Act and the evidence is not limited to the administrative record prepared by FNS.

98.    The FAD was based on an arbitrary and capricious interpretation of the Food and Nutrition Act of 2008 and FNS's SNAP regulations.

99.    FNS withdrew Alaska Fresh Fish & Chicken's SNAP authorization in violation of the Food and Nutrition Act of 2008 and FNS's SNAP regulations.

100.   FNS's withdrawal of Alaska Fresh Fish & Chicken's SNAP authorization was premised upon an erroneous, unsupportable, and arbitrary and capricious interpretation of 7 C.F.R. § 278.1.

101.   In issuing the FAD, FNS acted arbitrarily and capriciously by failing to consider all information submitted by or related to Alaska Fresh Fish & Chicken.

102.   Plaintiff respectfully requests a *de novo* review of FNS's FAD which affirmed the withdrawal of each Alaska Fresh Fish & Chicken's SNAP authorization.

WHEREFORE, Plaintiff respectfully requests that this Court, after conducting a *de novo* review of the FAD, enter judgment in its favor and against the United States, and issue an Order granting the following relief:

(a)   Reversing the FAD;

(b)   Vacating FNS's Initial Determinations;

(c)   Preliminarily enjoining FNS from withdrawing Alaska Fresh Fish & Chicken's authorization to participate in SNAP during the pendency of this action;

(d)   Permanently enjoining FNS from withdrawing Alaska Fresh Fish & Chicken's authorization to participate in SNAP based upon the Initial Determination and/or the FAD;

(e)   Awarding Alaska Fresh Fish & Chicken store an amount equal to its reasonable attorneys' fees and costs, including pursuant to the Equal Access to Justice Act; and

(f)   Such other and further relief as the Court may deem just and proper.

Respectfully submitted this 3rd day of March 2025.

By:     */s/ Stewart D. Fried*
        Stewart D. Fried, Esq.
        Olsson Frank Weeda Terman Matz PC
        2000 Pennsylvania Avenue, N.W., Suite 4003
        Washington, D.C. 20006
        (202) 518-6326 – Telephone
        (202) 747-3140 – Facsimile
        sfried@ofwlaw.com

        *Attorneys for Plaintiff Alaska Fresh Fish & Chicken LLC*